101 F.3d 685
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Richard PAGLIARULO, Defendant-Appellant.
 No. 95-1373.
 United States Court of Appeals, Second Circuit.
 May 29, 1996.
 
 1
 APPEARING FOR APPELLANT:Richard E. Mischel, New York, NY.
 
 
 2
 APPEARING FOR APPELLEE:Neil E. Ross, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY.
 
 
 3
 E.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 Before MESKILL, MINER, Circuit Judges, and LASKER,* District Judge.
 
 
 6
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York, it is hereby
 
 
 7
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 8
 This cause came on to be heard on the transcript of record and was argued.
 
 
 9
 Defendant-appellant Richard Pagliarulo appeals from a judgment entered in the United States District Court for the Eastern District of New York (Nickerson, J.) convicting him, following a jury trial, of racketeering and racketeering conspiracy, in violation of 18 U.S.C. § 1962(c) and (d), murder, in violation of 18 U.S.C. § 1959(a), attempted murder, in violation of 18 U.S.C. § 1959(a), conspiracy to commit murder, in violation of 18 U.S.C. § 1959(a), extortion conspiracy, in violation of 18 U.S.C. § 1951, and conspiracy to impede the collection of income taxes, in violation of 18 U.S.C. § 371. The district court sentenced him to life in prison, a five-year term of supervised release, a $250,000 fine, and a $950 special assessment.
 
 
 10
 The evidence presented at trial demonstrated that Pagliarulo was involved in numerous criminal activities in the late 1980s and early 1990s as a soldier and later as a captain in the Luchese Organized Crime Family of La Cosa Nostra (the "Family"). The evidence included electronic surveillance photographs, financial documents, and the testimony of three former members of the Family--Peter Chiodo, Thomas Carew, and Corrado Marino.
 
 
 11
 In April of 1992, Pagliarulo retained Jay Horlick as counsel. Pagliarulo later added Richard Heelan to his defense team. In October of 1992, Pagliarulo was arrested, and his trial began on May 23, 1994. Pagliarulo was called as the only witness for the defense. On June 1, 1994, immediately before the summations were to begin, Heelan requested permission to re-open the defense case in order to call another witness. The district court denied the request.
 
 
 12
 On June 2, 1994, the jury began its deliberations. On June 6th, Pagliarulo's newly-retained counsel, Richard Giampa, requested that the district court halt jury deliberations to allow the defense to re-open its case. The court denied the request. The jury returned its verdict on July 6, 1994, finding Pagliarulo guilty on all 19 counts charged against him.
 
 
 13
 On January 5, 1995, Pagliarulo moved, pursuant to Fed.R.Crim.P. 33, for a new trial. Pagliarulo contended that Horlick had failed to call certain defense and alibi witnesses, that he had failed properly to cross-examine the government's witnesses, and that he had failed adequately to prepare Pagliarulo for his testimony. Pagliarulo filed affirmations and affidavits with the Rule 33 motion. On June 2, 1995, the district court denied the motion. The district judge found that "Mr. H[o]rlick, given the circumstances which he was given, did a competent job. I thought that he examined the witnesses with skill. I thought his arguments were relevant and pertinent. I don't buy the fact that he was an ineffective counsel." The district judge also stated that "the evidence as to guilt was overwhelming as to each count." Pagliarulo was sentenced principally to life in prison.
 
 
 14
 On appeal, Pagliarulo argues that the district court abused its discretion in denying his motion for a new trial. He contends that he was denied his Sixth Amendment right to effective assistance of counsel. We disagree. In order to establish a claim of ineffective assistance, "a claimant must show both (1) that his attorney's performance fell below an 'objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Kieser v. New York, 56 F.3d 16, 18 (2d Cir.1995) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984)). This Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir.1990) (quotations and alterations omitted). "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." Kieser, 56 F.3d at 18 (quotations omitted).
 
 
 15
 In arguing that his defense counsel's performance fell below an "objective standard of reasonableness," Pagliarulo claims that Horlick made several errors. First, Pagliarulo contends that Horlick failed to call several expected defense and alibi witnesses. However, we have stated that "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 957 (1987). In the present case, Pagliarulo does not show that Horlick's failure to call certain witnesses was an unreasonable tactical decision. For instance, Pagliarulo contends that Horlick should have called as a witness Ron Gindoff, who was one of the owners of a company extorted by Pagliarulo. However, Gindoff indicated in a supplemental affidavit that he had made protection payments due to his fear of Pagliarulo. Accordingly, testimony by Gindoff likely would have been harmful to Pagliarulo, and the decision not to call him as a witness was a reasonable strategic decision.
 
 
 16
 Pagliarulo also contends that Horlick was ineffective due to his failure to conduct meaningful cross-examination of the government's witnesses. "Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature." Id. Pagliarulo asserts that Horlick's cross-examination was flawed in that it was directed at establishing a Reves defense. See Reves v. Ernst & Young, 507 U.S. 170 (1993). However, the district court observed that a Reves defense "was a pretty sound thing to do, certainly at the outset," and Pagliarulo does not show that Horlick's method of cross-examination was unreasonable.
 
 
 17
 In addition, Pagliarulo argues that Horlick was ineffective because Horlick failed to adequately prepare him for his testimony. During Pagliarulo's testimony, Horlick gave him an opportunity to deny his guilt as to each charge. However, the district court found Pagliarulo's testimony to be "totally implausible" and "false." Although Pagliarulo asserts that Horlick "hadn't really" prepared him, Pagliarulo does not show that Horlick could have further assisted him in improving the persuasiveness of his testimony.
 
 
 18
 We also reject Pagliarulo's other claims of deficient performance on the part of Horlick. For instance, he does not demonstrate that Horlick's failure to employ a chart to explain evidence of credit card records constituted unreasonable professional assistance. In addition, although Horlick asserts that he had diabetes and that he "felt and acted in an unusual manner," Pagliarulo fails to show how Horlick's representation was adversely affected by illness. Pagliarulo also does not show that Heelan, his other defense counsel, was unable to adequately represent him.
 
 
 19
 Moreover, even if we were to hold that Horlick's performance in this case fell below an "objective standard of reasonableness," see Kieser, 56 F.3d at 18 (quotation omitted), there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," see id. (quotation omitted). As the district court noted, "the evidence as to guilt was overwhelming as to each count" against Pagliarulo. See Nersesian, 824 F.2d at 1322 ("[E]ven assuming arguendo that counsel's performance was professionally deficient, in our view, [the defendant] cannot meet the second prong of the Strickland test.... The evidence against [the defendant] was overwhelming."). In the present case, the evidence presented at trial included electronic surveillance photographs, financial documents, and the testimony of three former members of the Family, all of which demonstrated Pagliarulo's guilt.
 
 
 
 *
 The Honorable Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation